UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
**LEXINGTON**

SEAN D. BAKER, SR.,                )
                                   )
        Plaintiff,                 )   Civil Action No. 5:05-221-JMH
                                   )
v.                                 )
                                   )
UNITED STATES OF AMERICA,          )
et al.,                            )   **MEMORANDUM OPINION & ORDER**
                                   )
        Defendants.                )

                    **        **        **        **        **

        This matter is before the Court on Defendants' motion to
dismiss [Record No. 8].  Despite being granted several extensions
of time in which to file a response, Plaintiff Sean D. Baker, Sr.
has failed to respond to Defendants' motion.  The Court being
sufficiently advised, this matter is ripe for review.

                              **I. BACKGROUND**

        On January 24, 2003, Baker was serving as a military police
officer with the 438th Military Police Unit of the Kentucky
National Guard at Camp Delta, Guantanamo Bay, Cuba.  Baker
volunteered to play the part of an uncooperative detainee for the
purpose of a forced cell extraction training exercise to be
performed by an Internal Reaction Force ("IRF") team.  Baker was
instructed to put on an orange jumpsuit, crawl under a bunk in a
cell, and lie on the floor facing the wall.  Baker was told to make
noise in the cell while hiding under the bunk and to resist all
verbal orders, but he was further instructed to comply with the IRF
team members when they entered his cell and to allow them to

restrain him with shackles and handcuffs. Before the exercise began, Baker was told to say the word "red" if he felt threatened or hurt and the team would stop the exercise. After hiding under the bunk for some time, Baker heard the IRF team approach the door of his cell and begin to shout verbal commands at him. Baker ignored these verbal commands and the team entered the cell, grabbed at Baker, and attempted to physically restrain him. Baker claims that he began to resist and then grunted the word "red," but the IRF team continued to apply physical force. As he was shouting the code word "red" and saying "I'm a U.S. soldier," one of the team members began to slam Baker's head onto the cell's steel floor. When one of the team members finally realized that Baker was a United States soldier, the exercise was halted. Soon after the incident, Baker received medical treatment for his injuries at the Guantanamo Naval Hospital. Since then, Baker has been hospitalized at the Naval Hospital in Portsmouth, Virginia, the Walter Reed Army Hospital in Washington, D.C., and the Veterans Affairs Medical Center in Lexington, Kentucky.

In September 2003, the United States Army's Physical Evaluation Board ("PEB") determined that Baker had a

> mood disorder due to traumatic brain injury [TBI] with mixed-mood incongruent psychotic features and cognitive disorder not otherwise specified, manifested by disnomia, with memory and cognitive deficits and subtle dysmetria. TBI was due to soldier playing role of detainee who was non-cooperative and was being extracted from detention cell in Guantanamo Bay, Cuba (LOD) during a training exercise.

(Am. Compl. ¶ 47.)   The PEB found that Baker was disabled, and on April 4, 2004, he was medically retired and honorably discharged from the United States Army.   Baker was formally awarded one hundred percent service-connected disability income because of the severity of his injuries.

Claiming that no investigation into his January 24, 2003, beating was initiated until February 1, 2003, Baker argues that the type of investigation that was initiated, a "line of duty investigation," was an inappropriate response because evidence was not preserved, key witnesses, including Baker, were not interviewed, the Judge Advocate General's Office did not review the investigation, and mandatory Army regulations were not followed.

Baker also contends that statements made to the press about his honorable discharge by an Army officer who was responding to news media accounts of his case discredited him and violated his rights under the Federal Privacy Act, 5 U.S.C. § 552a(b).   In May 2004, Major Laurie Arellano stated that Baker's discharge was unrelated to his training injuries and that there were other medical reasons for his discharge.   Subsequently, in a June 8, 2004, newspaper interview, Major Arellano stated that Baker's head injury was one of many factors that contributed to his discharge.

Baker has named the following parties as defendants in this action:  the United States; Donald Rumsfeld, Secretary, Department of Defense; the Department of the Army; Francis J. Harvey,

Secretary, Department of the Army; the Department of the Navy; Gordon R. England, Secretary, Department of the Navy; and Unknown Defendants I-VIII.   Baker brings the following claims in his amended complaint: Count I, violation of the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 1346(b); Count II, violation of his privacy rights under the Federal Privacy Act, 5 U.S.C. § 552a(b); Count III, violation of his rights under the First, Fifth, and Ninth Amendments to the Constitution.   In Count III, Baker alleges that Defendants violated federal law by failing to follow numerous United States Army regulations before and after his January 24, 2003, beating and that he suffered damages as a result of these violations.   In Count IV of his amended complaint, Baker asks the Court for injunctive relief to remedy the damages he sustained on January 24, 2003.

Defendants have moved the Court to dismiss Counts I, II, III, and IV for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1).   According to Defendants, dismissal is also proper for Count II pursuant to Federal Rule of Civil Procedure 12(b)(6) because Baker has failed to state a claim upon which relief can be granted.   The Court will consider the 12(b)(1) motion first, as the 12(b)(6) challenge becomes moot if subject matter jurisdiction is lacking.   *See Moir v. Greater Cleveland Reg'l Transit Auth.*, 895 F.2d 266, 269 (6th Cir. 1990) (citing *Bell v. Hood*, 327 U.S. 678, 682 (1946) (explaining that a

court must determine whether subject matter jurisdiction is present before addressing whether the complaint states a cause of action on which relief could be granted because determining the validity of the claim is itself an exercise of jurisdiction)).

## II. STANDARD OF REVIEW

A motion to dismiss for lack of subject matter jurisdiction is categorized as either a facial attack or a factual attack. *United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994). When a defendant presents a facial attack, it is a "challenge to the sufficiency of the pleading itself." *Id.* "On such a motion, the court must take the material allegations of the petition as true and construed in the light most favorable to the nonmoving party." *Id.* (citing *Scheuer v. Rhodes*, 416 U.S. 232, 235-37 (1974)). Conversely, a factual attack, as in this case, does not challenge the sufficiency of the allegations in the complaint but challenges "the factual existence of subject matter jurisdiction." *Id.* "No presumptive truthfulness applies to the factual allegations, and the court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Id.* (citing *Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990)). The plaintiff bears the burden of establishing subject matter jurisdiction by a preponderance of the evidence. *Moir*, 895 F.2d at 269. As Baker has not responded to Defendants' motion to dismiss, the Court must rely on his complaint as the only showing

of subject matter jurisdiction.

### III. DISCUSSION

*A.  Baker's Claims Under the FTCA*

The United States may only be sued if it waives its sovereign immunity.  *See Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 95 (1990).  The Federal Tort Claims Act includes a limited waiver to the government's immunity for complaints of injuries "caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment."  28 U.S.C. § 1346(b).[1]  Several exceptions are specified in the Act, and the judiciary has created an exception known as the *Feres* doctrine, which immunizes the federal government from liability for injuries received by servicemen while serving in the military.  *Feres v. United States*, 340 U.S. 135, 146 (1950). Based on Baker's amended complaint, the Court concludes that the actions complained of arose out of or were incident to military service; therefore, Baker's FTCA claim falls within the zone protected by the *Feres* doctrine.  *Id.*

The *Feres* doctrine precludes governmental FTCA liability for injuries to servicemen that result from activity "incident to service."  *United States v. Stanley*, 483 U.S. 669, 672 (1987).  In *Major v. United States*, 835 F.2d 641 (6th Cir. 1987), the Sixth

---

[1] Baker's claims under the FTCA in Count I are claims against only the United States.  *See* 28 U.S.C. § 2679(a),(b).

Circuit noted that *Feres*'s progeny have broadened the doctrine

> to encompass, at a minimum, *all* injuries suffered by
> military personnel that are even remotely related to the
> individual's status as a member of the military, without
> regard to the location of the event, the status (military
> or civilian) of the tortfeasor, or any nexus between the
> injury-producing event and the essential defense/combat
> purpose of the military activity from which it arose.

*Id.* at 644-45.  "*Feres* prohibits all service-related tort claims against the Government."  *Boyle v. United Techs. Corp.*, 487 U.S. 500, 510 (1988).  "As a general rule, an injury to an active duty service member on a military base . . . is deemed to be incident to military service."  *Woodside v. United States*, 606 F.2d 134, 142 (6th Cir. 1979).  Baker states that he was injured while serving on active duty on a military base; therefore, his injury was "incident to service," and his claim under the FTCA is barred by the *Feres* doctrine.  *Feres*, 340 U.S. at 144.

In Count I of his amended complaint, Baker alleges, "as regards [his] Federal Tort Claim, . . . as set forth in the previous paragraphs, that numerous mandatory provisions of federal law were violated" when he was ordered to play the role of a detainee in the training exercise that led to his injuries.  (Am. Compl. ¶ 131.)  It appears that Baker refers to "numerous mandatory provisions of federal law" to describe the Army regulations that he claims were not followed before he received his injuries on January 24, 2003, including regulations that caution against using troops as training aids and require briefing troops before initiating a

7

training exercise. To the extent that Baker argues in Count I and in Count III that the failure to follow these regulations constituted negligent supervision of the people who participated in the training exercise, he is still unable to avoid the consequences of the *Feres* doctrine. As stated in *United States v. Shearer*, 473 U.S. 52 (1985), Baker's claim that Army personnel were poorly trained "goes directly to 'the management' of the military" and "calls into question basic choices about the discipline, supervision, and control of a serviceman." *Id.* at 58. Under *Feres*, Baker's claims under Count I are nonjusticiable.

*B. Baker's Claims Under the Federal Privacy Act*

In Count II, Baker alleges that his rights under the Federal Privacy Act, 5 U.S.C. § 552a(b), were violated when Major Laurie Arellano made public statements about why he was discharged from the Army. Section 552a(b) provides, in pertinent part:

> (b) Conditions of disclosure. -- No agency shall disclose any record which is contained in a system of records by any means of communication to any person, or to another agency, except pursuant to a written request by, or with the prior written consent of, the individual to whom the record pertains . . . .

*Id.* This statute provides a remedy only if the Army has unlawfully released certain information and if the claimant establishes that he was adversely affected as a result. *See id.* (prohibiting disclosure of the information in certain circumstances); 5 U.S.C. § 552a(g)(1)(D) (requiring aggrieved party to show "adverse effect" because of disclosure). Section 552a(g)(1)(D) provides that a

8

claimant may seek a civil remedy against an agency that "fails to comply with any other provision of this section, or any rule promulgated thereunder, in such a way as to have an adverse effect on an individual." In *Quinn v. Stone*, 978 F.2d 126 (3d Cir. 1992), the Third Circuit listed the elements of a claim for damages under § 552a(g)(1)(D) for a violation of the Act's prohibition against disclosure in § 552a(b):

> (1) the information is covered by the Act as a "record" contained in a "system of records"; (2) the agency "disclose[d]" the information; (3) the disclosure had an "adverse effect" on the plaintiff (an element which separates itself into two components: (a) an adverse effect standing requirement and (b) a causal nexus between the disclosure and the adverse effect); and (4) the disclosure was "willful or intentional."

*Id.* at 131.  Recently, in *Doe v. Chao*, 540 U.S. 614 (2004), discussing this "adverse effect" element, the Supreme Court explained:

> [T]he reference in § 552a(g)(1)(D) to "adverse effect" acts as a term of art identifying a potential plaintiff who satisfies the injury-in-fact and causation requirements of Article III standing, and who may consequently bring a civil action without suffering dismissal for want of standing to sue.

*Id.* at 624.

Defendants argue that Baker lacks standing to bring this claim.  To satisfy the "case" or "controversy" requirement of Article III standing, Baker must, in general, demonstrate that he has suffered "'injury in fact,' that the injury is 'fairly traceable' to the actions of the defendant, and that the injury

9

will likely be redressed by a favorable decision." *Bennett v. Spear*, 520 U.S. 154, 162 (1997) (citations omitted). Baker has invoked federal subject matter jurisdiction in this matter and "has the burden of persuading the court that all of the requirements necessary to establish standing to bring the lawsuit have been met." *Courtney v. Smith*, 297 F.3d 455, 459 (6th Cir. 2002) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)). In the case *sub judice*, Baker has failed to allege that he suffered any adverse effect because of Major Arellano's statements. Throughout his complaint, Baker describes in detail how his quality of life has diminished due to the head injury he received on January 24, 2003. Conversely, when discussing his claim in Count II under the Privacy Act, Baker never provides any description of how Major Arellano's statements adversely affected him. His claims that the statements were made "to his detriment" and that the violations of his privacy rights caused him "damages in an amount in excess of the jurisdiction of federal court" are insufficient. (Am. Compl. ¶¶ 140, 145.) Due to his failure to allege any adverse effect stemming from Major Arellano's statements, Baker does not have standing to sue and his claim under the Privacy Act will be dismissed. *See Quinn*, 978 F.2d at 135-36 (finding that allegations of stress, emotional anguish, and occupational losses due to the defendants' actions were sufficient to satisfy the Act's adverse effect standing requirement); *see also Cardamone v. Cohen*, 241 F.3d

10

520, 529-30 (6th Cir. 2001) (discussing how the absence of a causal connection between the challenged conduct and the alleged adverse effect was fatal to the plaintiff's claim under § 552a(e)(3)).

*C. Baker's Constitutional and Statutory Claims*

It is well settled that federal courts have no jurisdiction to consider actions for monetary damages brought against the United States unless there has been a waiver of sovereign immunity. *See United States v. Mitchell*, 463 U.S. 206, 212 (1983). As Baker's claims against Secretaries Rumsfeld, Harvey, and England were brought against them in their official capacities,[2] his claims are considered claims against the United States. *See Kentucky*, 473 U.S. at 165, 167.

This Court does not have subject matter jurisdiction over the claims in Count III. As noted by Defendants, the United States has not explicitly waived sovereign immunity for the constitutional

---

[2] "Personal-capacity suits seek to impose personal liability upon a government official for actions he takes under color of state law." *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985) (citing *Scheuer*, 416 U.S. at 237). "Official-capacity suits, in contrast, 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'" *Id.* (citing *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 690, n.55 (1978)). Defendants note that neither Secretary Harvey nor Secretary England held their respective offices when Baker was injured on January 24, 2003 and that there is a presumption that government officials are sued in their official capacities. *See id.* at 165. Baker has neither challenged Defendants' characterization of his claims against the individual secretaries as claims against them in their official capacities nor has he presented any evidence that he seeks to hold the secretaries personally responsible for actions they took "under color of state law."

torts alleged by Baker.  *See FDIC v. Meyer*, 510 U.S. 471, 478 (1994) ("[T]he United States simply has not rendered itself liable under [the FTCA] for constitutional tort claims."); *Keene Corp. v. United States*, 700 F.2d 836, 845 n.13 (2d Cir. 1983) ("*Bivens*-type actions against the United States are . . . routinely dismissed for lack of subject matter jurisdiction." (citing *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971))). The Departments of the Army and the Navy are protected by the doctrine of sovereign immunity.  *See Dep't of the Army v. Blue Fox, Inc.*, 525 U.S. 255, 260 (1999) ("'Absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit.'" (quoting *Meyer*, 510 U.S. at 475)).  As such, it is manifest that the claims in Count III cannot be maintained against the defendants.

D.  *Baker's Claims for Injunctive Relief*

In Count IV, Baker requests the following injunctive relief to remedy the damages he sustained on January 24, 2003:  reinstatement into the United States Army, reasonable assistance to accommodate his disability once he is reinstated, the opportunity to succeed as a career soldier, an order directed toward Secretary Rumsfeld and Secretary Harvey to expedite a criminal investigation into his assault, an order directed toward Secretary Rumsfeld and Secretary Harvey to investigate criminal wrongdoing in connection with his assault, and an order directing Secretary Rumsfeld and Secretary

Harvey to comply with the mandatory provisions of federal law regarding the types of investigations that Baker claims should have been instituted after his assault.

The Tucker Act grants the United States Court of Federal Claims "jurisdiction to render judgment upon any claim against the United States . . . for liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C. § 1491(a)(1). The Little Tucker Act grants district courts original jurisdiction, concurrent with the Court of Federal Claims, over "[a]ny . . . civil action or claim against the United States, not exceeding $10,000 in amount." 28 U.S.C. § 1346(a)(2). Defendants contend that Baker is asking this Court to adjudicate a claim that involves damages that exceed $10,000. For this reason, Defendants argue that jurisdiction is lacking. The Court is inclined to agree. Baker has asked for reinstatement into the military and that "his compensation be no less than his current disability payments." (Am. Compl. ¶ 152(a).) This claim is within the exclusive jurisdiction of the Court of Federal Claims. *See* 28 U.S.C. §§ 1346(a)(2), 1491(a)(1); *A.E. Finley & Assocs., Inc. v. United States*, 898 F.2d 1165, 1167 (6th Cir. 1990) (holding that "one cannot circumvent exclusive jurisdiction in the Claims Court by suing simply for declaratory or injunctive relief in a case where such relief would be the equivalent of a judgment for money damages"); *Matthews v. United States*, 810 F.2d 109, 111 (6th Cir. 1987) (finding that plaintiffs

could not take their claim for relief, which initially included a claim for back pay, "out of the Tucker Act simply by changing its label" because their successful claim for reinstatement alone would "result in the United States eventually being obliged to pay out money"); *Chelsea Cmty. Hosp., SNF v. Michigan Blue Cross Ass'n*, 630 F.2d 1131, 1136 (6th Cir. 1980) (stating that "[t]he exclusiveness of the Court of Claims's jurisdiction may not be defeated by couching a prayer for a money judgment in terms of a request for injunctive or declaratory relief" (footnote and citation omitted)).

To the extent that Baker asks the Court to review how the Defendants investigated his assault, he has presented a nonjusticiable question. An Article 32 investigation is the military counterpart to the civilian grand jury, *Morgan v. Perry*, 142 F.3d 670, 678 n.13 (3d Cir. 1998), and is "an impartial inquiry into the truth of the charges alleged that culminates in a recommendation as to how the military should proceed." *Lawrence v. McCarthy*, 344 F.3d 467, 469 (5th Cir. 2003) (citing 10 U.S.C. § 832). In *McKinney v. Caldera*, 141 F. Supp. 2d 25 (D.D.C. 2001), *aff'd sub nom. McKinney v. White*, 291 F.3d 851 (D.C. Cir. 2002), the court warned that "Congress has reinforced the independence of the military justice system, having 'never deemed it appropriate to confer on the [Supreme Court] "appellate jurisdiction to supervise the administration of criminal justice in the military."'" *Id.* at 30 (quoting *Schlesinger v. Councilman*, 420 U.S. 738, 746 (1975)

14

(quoting *Noyd v. Bond*, 395 U.S. 683, 694 (1969))). Baker asks this Court to compel the defendants "to expedite the criminal investigation into [his] beating . . . require the Criminal Investigation Division to complete its criminal investigation, [and] institute Article 32 proceedings to investigate criminal wrongdoing in connection with [his beating]." (Am. Compl. ¶ 152(d),(e).) In Count IV, Baker asks this Court to review Defendants' actions in proceeding with a criminal investigation of his assault; simply put, the Court is without jurisdiction to adjudicate this claim.

## IV. CONCLUSION

Accordingly, and based on the foregoing reasons, **IT IS ORDERED**,

(1) That Defendants' motion to dismiss [Record No. 8] be, and the same hereby is, **GRANTED**;

(2) That Plaintiff's claims be, and the same hereby are, **DISMISSED WITHOUT PREJUDICE.**

This the 8th day of June, 2006.



Signed By:

_Joseph M. Hood_

United States District Judge

15